UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRENE TAWIAH DAGHER and JOHN DAGHER, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-3575-B |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NCI Mortgage Pass-Through Certificates, Series 2007-NCI, and OCWEN FINANCIAL CORPORATION, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 78). For the reasons that follow, the Court **GRANTS** the Motion.

### I.

### BACKGROUND[1]

This is a mortgage foreclosure case in which Plaintiffs John and Irene Dagher (the "Daghers") are suing their mortgagee, Defendant Deutsche Bank National Trust Company ("Deutsche"), and mortgage servicer, Defendant Ocwen Financial Corporation ("Ocwen") (collectively, "Defendants"). In 2006, John Dagher executed an Adjustable Rate Balloon Note in exchange for a $185,600.00 loan from New Century Mortgage Corporation, secured by a Deed of Trust covering the Daghers' real

---

[1] The Court draws its factual account from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a party's contention, these facts are undisputed.

- 1 -

property at 10203 Shadow Way, Dallas, Texas 75243 (the "Property"). Doc. 80, Defs.' App. 7–11, Note; *id.* at 13–35, Deed of Trust; *see also* Doc. 84-1, Aff. of Irene Tawiah Dagher ¶ 3 [hereinafter "Dagher Aff."]. Three years later, Mortgage Electronic Registration Systems, Inc. (MERS), which was named as the original lender's nominee in the Deed of Trust, transferred the Note and accompanying lien on the Property to Deutsche. Doc. 80, Defs.' App. 37–39, Assignment; *see also id.* at 14, Deed of Trust (identifying MERS as the lender's nominee).

In 2012,[2] the Daghers entered into a Modification Agreement with Deutsche,[3] which obligated them to make a down payment of $1,782.78 by March 1, 2012, and monthly payments in the same amount on the first of each month thereafter. *Id.* at 43, Modification Agreement; *see also* Doc. 84-1, Dagher Aff. ¶ 5. The Daghers made the down payment in March, but submitted no monthly payments after that. Doc. 80, Defs.' App. 4, Decl. of Howard R. Handville ¶ 6 [hereinafter "Handville Decl."]; *id.* at 52, Payment History. The parties disagree about the cause of this failure. On the one hand, the Daghers allege that they attempted to make payments in April and May 2012, and that they mailed an $8,000 check to Ocwen in September 2014. *Id.* at 93, Pls.' Resps. to Discovery. Allegedly, Ocwen's lawyers told the Daghers they could not make payments because either Ocwen or Deutsche had lost the Modification Agreement, and thus the Daghers' account had not been activated. Doc. 84-1, Dagher Aff. ¶¶ 9–10. The Daghers further assert that the September 2014 payment was not properly applied. Doc. 80, Defs.' App. 95, Pls.' Resps. to Discovery.

---

[2] Four dates appear in the Modification Agreement: the effective date (March 1, 2012), the notarization date for the Daghers' signatures (September 18, 2012), the notarization date for Deutsche's signature (September 25, 2012), and the date on which the Agreement was electronically record (December 10, 2013). Doc. 80, Defs.' App. 41, 43, 47–48, Modification Agreement.

[3] The Modification Agreement identifies Ocwen as the mortgage servicer. *See* Doc. 80, Defs.' App. 46, Modification Agreement (instructing the Daghers to send all payments to Ocwen).

Defendants, on the other hand, argue that there is no record of the Daghers ever attempting to make a payment after the initial down payment. *Id.* at 4, Handville Decl. ¶ 7; *id.* at 52, Payment History.

Whatever the reason, the Daghers did not make any monthly payments and defaulted as a result. On December 7, 2012, Ocwen—through its lawyers—sent the Daghers a Notice of Default and Intent to Accelerate ("Notice of Default"), which notified the Daghers of their delinquency and gave them thirty days to cure. *Id.* at 59–60, Notice of Default; *see also id.* at 55, Decl. of Brandon Wolf ¶ 3 [hereinafter "Wolf Decl."]. Then, on January 10, 2013, Ocwen sent the Daghers each a Notice of Acceleration of Loan Maturity ("Notice of Acceleration"), informing them that it was accelerating the loan's maturity as a result of their failure to cure the default. *Id.* at 66, 72, Notice of Acceleration. These letters also included Notices of Foreclosure Sale, which notified the Daghers that a foreclosure sale was scheduled for February 5, 2013. *Id.* at 67, 73, Notice of Foreclosure Sale. Ocwen posted and filed the Notice of Foreclosure Sale at the Dallas County Clerk's office on or around January 14, 2013. *Id.* at 55, Wolf Decl. ¶ 5; *see also id.* at 75, Notice of Foreclosure Sale. Defendants foreclosed on the Property on February 5, 2013. Doc. 84-1, Dagher Aff. ¶ 17.

The Daghers filed this lawsuit in the 191st Judicial District Court of Dallas County, Texas, alleging breach of contract, fraud, and intentional infliction of emotional distress. Doc. 1-8, Original Pet. Defendants removed the case to this Court on September 6, 2013, Doc. 1, Notice of Removal, and now move for summary judgment. Doc. 78, Defs.' Mot. for Summ. J. [hereinafter "MSJ"]. The Daghers responded, and Defendants replied. Doc. 84, Pls.' Objs. & Resps. to Second Mot. for Summ. J. [hereinafter "Pls.' Resp."]; Doc. 85, Defs.' Reply in Supp. of Summ. J. [hereinafter "Defs.' Reply"]. Thus, the Motion is ripe for review.

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and record evidence, taken as a whole, show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). To meet this burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted). Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (internal citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A non-movant may not simply rely on the Court to sift through the summary judgment record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Thus, the non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The Court will not make credibility determinations, weigh the evidence, or draw inferences, but instead confines its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

## III.

## ANALYSIS[4]

The Daghers make claims for breach of contract, fraud, and intentional infliction of emotional distress ("IIED"). Doc. 1-8, Original Pet. ¶¶ 26–30. They argue that Deutsche and Ocwen (1) breached the Deed of Trust by foreclosing without the right to do so, and (2) breached the Modification Agreement failing to activate the Daghers' account so they could make the required payments. *Id.* ¶¶ 26, 28. Their fraud claims are based on Defendants' alleged misrepresentations that they (1) lost the Modification Agreement and could not activate the Daghers' account, and (2) performed the required prerequisites to foreclosure. *Id.* ¶¶ 27, 29. Last, the Daghers assert that Defendants intentionally caused them emotional distress by (1) wrongfully foreclosing, and (2) filing a forcible detainer action to dispossess the Daghers of the Property. *Id.* ¶¶ 28, 30. Because the

---

[4] The Daghers have objected to Defendants' summary judgment evidence. Doc. 84, Pls.' Resp. 1–3. None of these objections warrant excluding the evidence, so the Court overrules them.

Daghers rely on Defendants' lack of authority to foreclose as a theory for each claim, the Court will address that issue first.

A.     *Deutsche and Ocwen Had Authority to Foreclose*

Texas law empowers either a mortgagee or a mortgage servicer to foreclose. *See Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (unpublished) (per curiam) (citing Tex. Prop. Code §§ 51.002, 51.0025). A "mortgagee" is either (1) "the grantee, beneficiary, owner, or holder of a security instrument"; (2) "a book entry system"; or (3) "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4). A "mortgage servicer," on the other hand, is simply "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* § 51.0001(3).

The evidence shows conclusively that Deutsche is the mortgagee and Ocwen is the mortgage servicer. In 2009, MERS assigned the Note and accompanying lien to Deutsche, making Deutsche "the grantee, beneficiary, owner, or holder" of the Note.[5] Doc. 80, Defs.' App. 37–39, Assignment. And the Modification Agreement instructed the Daghers to make "[a]ll payments" to Ocwen. *Id.* at 46, Modification Agreement. Ocwen is thus "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument," making it the Daghers' mortgage servicer. Accordingly, either Deutsche or Ocwen could have legally foreclosed on the Property, provided that it followed the proper procedure for doing so.

---

[5] MERS, as nominee, was authorized to transfer the Note to Deutsche. *See Lakiesha v. Bank of New York Mellon*, No. 3:15-CV-0901, 2015 WL 5934439, at *11 (N.D. Tex. Oct. 9, 2015) (interpreting identical deed of trust provision describing MERS's rights).

For a foreclosure to be valid, "the holder of a defaulted note must give notice of intent to accelerate with demand for payment and time to cure, notice of acceleration, and notice of foreclosure sale at least [twenty-one] days before the sale and notice of default at least twenty days before notice of sale."[6] *Clark v. F.D.I.C.*, 849 F. Supp. 2d 736, 742 (S.D. Tex. 2011); *see also* Tex. Prop. Code § 51.002(b), (d). Here, Ocwen sent the Notice of Default to the Daghers on December 7, 2012. Doc. 80, Defs.' App. 59–60, Notice of Default. Thirty-four days later, Ocwen sent the Notice of Acceleration, which was accompanied by a Notice of Foreclosure Sale. *Id.* at 69–70, 72–73, Notice of Acceleration. Defendants foreclosed on the Property on February 5, 2013, twenty-six days after the Notice of Acceleration and the Notice of Foreclosure Sale. Doc. 84-1, Dagher Aff. ¶ 17. Thus, Defendants sent the required notices in a timely manner.

The Daghers argue that Defendants have not proven that they sent these notices by certified mail, as required by Texas Property Code § 51.002(b)(3). Doc. 84, Pls.' Resp. ¶ 32. Both the Notice of Default and the Notice of Acceleration bear certified mail tracking numbers and contain the words "CERT MAIL" in the header. Doc. 80, Defs.' App. 58–59, Notice of Default; *id.* at 68–69, 71–72, Notice of Acceleration. Furthermore, Brandon Wolf—an attorney at the firm that represented Ocwen in the foreclosure—attested that his firm sent these notices on Ocwen's behalf, and that it was the firm's regular practice to mail these notices. *Id.* at 54–56, Wolf Decl. ¶¶ 2–4, 6. The Daghers argue that Wolf's statements do not establish personal knowledge of the mailing. Doc. 84, Pls.' Resp. ¶ 32. But Wolf declared that his "testimony is based upon [his] familiarity with the business practices, record keeping system, and servicing practices of [the firm], and [his] review

---

[6] The Deed of Trust imposes the same prerequisites to foreclosure, except that the mortgagor must be given at least thirty days to cure rather than twenty. Doc. 80, Defs.' App. 25, Deed of Trust ¶ 22.

of [the firm's] business records." Doc. 80, Defs.' App. 54–55, Wolf Decl. ¶ 2. Although Wolf "may not have personally sent the notice, it is well settled that declarations made by corporate representatives are sufficient to prove a corporate act, such as mailing notice by certified mail." *Rodriguez v. U.S. Bank, N.A.*, No. SA-12-CV-345, 2013 WL 5173125, at *2 (W.D. Tex. Sept. 12, 2013) (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013)). Taken together, then, Defendants' evidence establishes that they followed the Texas Property Code's mailing requirements. Moreover, the Daghers have admitted to receiving these notices. Doc. 80, Defs.' App. 85, Pls.' Resps. to Discovery ¶¶ 15, 17. So even if Defendants failed to send them via certified mail, "where the debtor actually timely receives the notice required by section 51.002(b)(3) there is a sufficient compliance with that requirement." *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n.6 (5th Cir. 1989). Therefore, Defendants complied with the Texas Property Code's procedural requirements and were authorized to foreclose on the Property.

B.   *Statute of Frauds*

Defendants argue that the Court should dismiss the Daghers' claims because they are barred by Texas's statute of frauds. Doc. 79, Defs.' Br. in Supp. of Mot. for Summ. J. 6–8 [hereinafter "Defs.' MSJ Br."]. Under Texas law, "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code § 26.02(b). This provision also covers modifications of loans within the statute of frauds's ambit.[7] *See Martins*, 722 F.3d at 256. Courts have applied the statute of frauds to bar a wide variety of claims, including breach of contract

---

[7] The parties do not dispute that the Daghers' mortgage exceeds the requisite amount, and is thus subject to the statute of frauds.

and fraud. *See Brown v. ASC Mortg.*, No. 4:15-CV-0389, 2015 WL 2452618, at *3 (N.D. Tex. May 22, 2015) (fraud); *Balch v. JP Morgan Chase Bank, NA*, No. 3:14-CV-3666, 2015 WL 1592386, at *3 (N.D. Tex. Apr. 8, 2015) (breach of contract); *Mitchiner-Owen v. OCWEN Loan Servicing, LLC*, No. 3:14-CV-0407, 2015 WL 11120980, at *2 (N.D. Tex. Feb. 18, 2015) (fraudulent misrepresentation).

This Court has previously found that a mortgagee's oral statement or commitment inconsistent with the parties' written agreement constitutes a modification of that agreement. *See Kruse v. Bank of New York Mellon*, 936 F. Supp. 2d 790, 794–95 (N.D. Tex. 2013). Here, Defendants allegedly told the Daghers that they could not make monthly payments because their account had not been set up. Doc. 84-1, Dagher Aff. ¶¶ 9–10. To the extent that the Daghers claim Defendants instructed them not to make monthly payments, this is inconsistent with the Modification Agreement, which required them to make payments on the first of each month and indicated that a failure to make those payments would be a default. Doc. 80, Defs.' App. 43–44, Modification Agreement. The alleged statement is therefore an oral modification, which is not enforceable under the statute of frauds. As a result, the Daghers' claims are barred insofar as they rest on this purported oral modification.

C.   *The Daghers' Claims*

The Court must now assess the viability of the Daghers' claims individually. As explained below, all of the claims fail.

1.   <u>Breach of Contract</u>

The Daghers' breach of contract claims are based on two theories: first, that Defendants did not fulfill the contractual prerequisites to foreclosure, and second, that Defendants failed to set up

the Daghers' account, thereby preventing them from making their monthly payments. Doc. 1-8, Original Pet. ¶¶ 26, 28. As explained above, however, Defendants complied with the Deed of Trust's notice requirements, meaning that the Daghers' first breach claim fails.

As to the second breach claim, Defendants argue that the Daghers cannot maintain their claim because they have not identified a specific provision of the Modification Agreement that Defendants allegedly breached. Doc. 79, Defs.' MSJ Br. 9. The Fifth Circuit has noted that "a claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (unpublished) (per curiam). Although the Daghers' claim is premised on a breach of the Modification Agreement rather than the Note or Deed of Trust, there is no principled distinction that precludes applying the rule in this circumstance—the Modification Agreement simply modifies the Note and Deed of Trust, which otherwise remain in effect. Doc. 80, Defs.' App. 43, Modification Agreement ¶ 1. Moreover, this Court and others have not confined this rule's application solely to claims for breach of a note or deed of trust. *See Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) (involving contracts for purchase of interest in oil wells and production); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (involving health benefits plans); *cf. Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 739 (5th Cir. 2015) (unpublished) (per curiam) (referencing rule in case involving health care provider agreement).

The Daghers have not identified a specific contractual provision that Defendants allegedly breached. Instead, they have simply alleged that "Defendants have breached the terms of the Modification Agreement by failing to provide activiation [sic] of the Account so that the Plaintiffs

who were ready, willing and able to pay could do so." Doc. 1-8, Original Pet. ¶ 28. The Daghers point to no provision in the Modification Agreement that requires Defendants to activate an "Account," and the Court has not been able to locate one. Because these generic allegations of breach cannot sustain the Daghers' claim, it must be dismissed.

   2.   Fraud

Like their breach of contract claims, the Daghers base their fraud claims on two theories: (1) Defendants misrepresented their authority to foreclose on the Property, and (2) Defendants misrepresented that they had lost the original Modification Agreement, which prevented them from activating the Daghers' account. Doc. 1-8, Original Pet. ¶¶ 27, 29. Neither claim can survive. The first one fails because Defendants were authorized to foreclose, and the second is barred by the statute of frauds. The Daghers have simply repackaged the alleged oral modification—that they should not make payments because the account was not set up—as a misrepresentation. They cannot circumvent the statute of frauds in this way, so Defendants are entitled to summary judgment. *See Brown*, 2015 WL 2452618, at *3.

   3.   IIED

Last, Defendants seek summary judgment on the Daghers' IIED claims. The Daghers allege that Defendants intentionally caused them emotional distress by (1) foreclosing without authority, and (2) filing a forcible detainer action to dispossess the Daghers of the Property. Doc. 1-8, Original Pet. ¶¶ 28, 30.

To prevail on an IIED claim, a plaintiff must prove (1) the defendants acted intentionally or recklessly; (2) their conduct was extreme and outrageous; (3) their actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216

S.W.3d 788, 796 (Tex. 2006). "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous." *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). IIED is, moreover, a "gap-filler tort," meant to "allow[] recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447. "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.*

Defendants' conduct in this case was not "extreme and outrageous" as a matter of law. Where a defendant "does no more than insist on his legal rights in a permissible way," that conduct will not give rise to an IIED claim. *Wieler v. United Sav. Ass'n of Tex., FSB*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994, writ denied). Here, Defendants were authorized to foreclose, and doing so simply effectuated their legal rights in a permissible way. Even if Defendants had breached the Modification Agreement, this cannot form the basis of an IIED claim. *See Johnson v. Affiliated Computer Servs., Inc.*, No. 3:10-CV-2333, 2011 WL 4011429, at *9 (N.D. Tex. Sept. 9, 2011) ("[A]n IIED claim cannot be maintained in situations involving a violation of some other legally recognized interest, even if such violation ultimately results in emotional distress."). Likewise, once Defendants foreclosed on the Property, they were entitled to bring a forcible detainer action. *See* Tex. Prop. Code § 24.002; *Murphy v. Countrywide Home Loans, Inc.*, 199 S.W.3d 441, 445–47 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Thus, this conduct cannot sustain an IIED claim, either.

In sum, Defendants are entitled to summary judgment on the Daghers' claims. They were authorized to foreclose, so they did not breach the Deed of Trust, nor did they commit fraud or intentionally inflict emotional distress on that basis. The Daghers have not identified which provision of the Modification Agreement Defendants allegedly breached, and their fraud claim based on Defendants' failure to activate their account is barred by the statute of frauds. Finally, filing a forcible detainer action after a valid foreclosure cannot form the basis of an IIED claim. All of the Daghers' claims fail.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 78) and **ORDERS** that all of the Daghers' claims be **DISMISSED with prejudice**.

SO ORDERED.

DATED: August 4, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE